IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| BREANNA CORBITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 7:14-CV-17 (MTT) |
| ) | |
| WALGREEN CO. and ) | |
| THE CITY OF VALDOSTA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### ORDER

Plaintiff Breanna Corbitt is suing Walgreen Co. and the City of Valdosta, Georgia ("City") based on her arrest after an individual using her driver's license presented a forged prescription. She has asserted a claim of negligence against Walgreen and a claim pursuant to 42 U.S.C. § 1983 against the City. She has not sued the city detective who swore out the warrant for her arrest. Before the Court is the City's motion for summary judgment. (Doc. 21). For the following reasons, the motion is **GRANTED**.

### I. BACKGROUND

Around July 6, 2012, Plaintiff Breanna Corbitt discovered her wallet was lost or had been stolen. (Doc. 24 at 14:11-19, 17:8-22). She got a new driver's license and contacted her bank to cancel her debit card. (Doc. 24 at 15:13-17, 17:14-18:1). When she contacted the bank, she learned there were unauthorized transactions on her debit card, but she did not report the incident to law enforcement. (Doc. 24 at 18:7-14, 54:4-55:5).

On August 8, 2012, Detective Travis Sparks with the Valdosta Police Department ("VPD") responded to Walgreen's Pharmacy because of a report that a forged

prescription had been presented and filled.  (Doc. 30 at 5:21-8:9).  Pharmacist Howard Schweitzer informed Detective Sparks that on August 5, 2012, an individual presented a prescription for Lortab at the pharmacy's drive-through window.  (Doc. 30 at 7:13-24).  Schweitzer gave Detective Sparks a photocopy of Breanna Michelle Corbitt's Georgia driver's license, which was presented with the prescription.  (Docs. 30 at 8:4-9, 21-23).  According to Detective Sparks's report, "Schweitzer stated that he confirmed the picture on the driver's license was in fact the person in the drive through."  (Doc. 32-3 at 1).  The drive-through had no video surveillance.  (Doc. 30 at 8:10-12).  Schweitzer also told Detective Sparks he later learned the prescription was fraudulent.  (Docs. 30 at 8:4-9; 29 at 20:17-21, 21:5-10).

The prescription at issue appeared to have been written by Keith Munoz, a physician assistant working under the direction of Dr. Susan Harding.  (Doc. 21-5).  Shortly after leaving the pharmacy, Detective Sparks spoke with Dr. Harding, who confirmed the prescription was fraudulent.  (Doc. 30 at 13:12-18, 14:4-18).  On August 9, 2012, Detective Sparks met with Munoz, who also told him the prescription was a forgery.  (Doc. 30 at 15:4-16:7).

On September 7, 2012, Detective Sparks presented the facts of the case to Judge Elizabeth Cleveland of the Lowndes County Magistrate Court in a warrant affidavit.  (Docs. 21-7; 30 at 16:8-14).  Judge Cleveland signed an arrest warrant for Corbitt for obtaining a prescription by forgery in violation of O.C.G.A. § 16-13-43(a)(3).  (Docs. 21-7; 30 at 16:12-14).  Corbitt was arrested by two officers with the Lowndes County Sheriff's Department on September 10, 2012.  (Docs. 28 at 10:6-19; 24 at 19:5-7).  No member of the VPD was involved in Corbitt's arrest.  The officers took Corbitt to

the Lowndes County Jail where she was booked and released the same day. (Doc. 24 at 28:24-29:1). The case against Corbitt was dismissed on November 15, 2012. (Doc. 18-3).

## II.     DISCUSSION

### A.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.

### B.  Plaintiff's § 1983 Claim Against the City

The Plaintiff's claim against the City fails for at least two reasons. First, there is no evidence that the City *itself* (as opposed to Detective Sparks, for example) violated the Plaintiff's constitutional rights. Second, there is no genuine dispute that Detective Sparks had probable cause to arrest the Plaintiff, meaning there was no violation of the Plaintiff's constitutional rights at all.

#### 1.  Municipal Policy or Custom

"Section 1983 is no source of substantive federal rights." *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996). To state a claim pursuant to § 1983, the plaintiff must show "the violation of a right secured by the Constitution and laws of the United States, and … the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[I]t is by now axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007). A municipality is only liable under § 1983 if the execution of its policy or custom was the cause of the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*,

436 U.S. 658, 694 (1978). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). "If a facially-lawful [i.e., constitutional] municipal action is alleged to have caused a municipal employee to violate a plaintiff's constitutional rights, the plaintiff must establish that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1187 (11th Cir. 2011) (internal quotation marks and citation omitted).

The City contends it is entitled to summary judgment because the Plaintiff has failed to show the alleged constitutional violation was the result of a municipal policy or custom. In response to the City's motion, the Plaintiff first points to General Order 300-05: "Criminal Investigations," which provides that "officers should exhaust every legitimate effort to bring every investigation to a successful conclusion." (Doc. 32-6 at 11). The policy includes suggestions to conduct suspect interviews, conduct background investigations, and properly identify and apprehend suspects. (Doc. 32-6 at 24). Because the policy is obviously facially constitutional, the Plaintiff must establish the City was deliberately indifferent to known or obvious consequences of the policy. The Plaintiff argues that the policy includes the above suggestions for investigating officers because of "the obvious danger that an innocent individual may be falsely arrested due to an inadequate investigation" but that the policy does not go far enough because the officers have wide discretion in conducting investigations. (Doc. 32-1 at 10-11). However, the Plaintiff has presented no evidence that the City knew this policy would result in constitutional violations. The Court also cannot conclude, in the absence

of any evidence, that providing guidelines instead of mandates to officers conducting criminal investigations imposes an "obvious" danger of constitutional violations. *Cf. Am. Fed'n of Labor & Cong. of Indus. Orgs.*, 637 F.3d at 1188 (finding no municipal liability in the absence of evidence municipality knew policy would result in constitutional violations or it was obvious such violations would occur).

The Plaintiff next argues that the City may be liable on a failure-to-train theory. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (footnote omitted). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Here, the Plaintiff argues the City *may* have adopted an insufficient training policy, but she cannot be sure because the City did not produce a copy of the "Training" portion of its policy in response to the Plaintiff's request for it to produce "[a] copy of all written policies, and/or procedures related to the subject matter of this litigation." (Doc. 32-7 at 4).[1] This argument fails for two reasons. First, the Plaintiff has not moved the Court to compel the City to produce its "Training" policy; she is simply asserting she does not have it and thus does not know whether it is adequate. This is not sufficient to meet her burden in response to the City's motion. Second, even if the Court had the "Training" policy, the City would only be liable if it was on actual or constructive notice that the policy caused its officers to violate citizens' constitutional

---

[1] VPD Chief Brian Childress references the "Training" policy in his affidavit. (Doc. 21-3, ¶ 12).

rights. The Plaintiff has presented no evidence of a pattern of constitutional violations by VPD officers, and "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (citation omitted).

Because the Plaintiff has failed to show the alleged constitutional deprivation was the result of a municipal policy or custom, the City is entitled to summary judgment.

### 2. Constitutional Violation

The complaint does not specify the type of constitutional claim the Plaintiff is asserting beyond an allegation that "The City of Valdosta showed deliberate indifference to violations of Plaintiff's constitutional rights as protected under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States." (Doc. 1, ¶ 21). Because the Plaintiff is suing based on an allegedly improper arrest, the City reads the complaint as asserting either a false arrest or a malicious prosecution claim in violation of the Fourth Amendment, and the Plaintiff characterizes her claim as one for false arrest in her response brief. However, because the Plaintiff was arrested pursuant to a warrant, her claim is properly one for malicious prosecution. *See Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one … — constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest."); *Whiting*, 85 F.3d at 585-86.

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). "Because lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim." *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed … an offense." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). It is immaterial to determining whether probable cause to arrest existed that an individual is ultimately not prosecuted or is later acquitted. *See Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002); *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995).

The City contends the Plaintiff's claim fails because there was probable cause to arrest her. Both sides focus on the information Detective Sparks had available to him rather than the contents of the warrant affidavit he presented to the magistrate judge.[2]

---

[2] The warrant affidavit states:

> Personally came Det. Travis Sparks, who on oath says that, to the best of his knowledge and belief, that Breanna Michelle Corbitt did on August 5, 2012 at approximately 10:57 AM at 1800 Baytree Road, Lowndes County, GA, commit the offense of Felony: Obtain Prescription by Forgery against the State, in that the said accused did knowingly, intentionally, willfully, unlawfully and criminally obtain 120 tablets of Lortab (Hydrocodone 10mg) (Schedule III) at Walgreen's Pharmacy located at 1800 Baytree Road, Valdosta, Georgia, from a forged prescription alleged to be written by PA Keith Munoz for Breanna Corbitt. Prescription was verified as fraudulent by PA Keith Munoz of Dr. Susan Harding's office.

(Doc. 21-7 at 3). The most the Plaintiff says is that because Detective Sparks did not conduct a reasonable investigation, he should have known his affidavit failed to establish probable cause. This argument is not particularly helpful in the present case because Detective Sparks is not being sued, and thus, whether a reasonable officer in his position should have known his affidavit did not establish probable cause (and consequently not be entitled to qualified immunity) is not at issue. *See Malley v. Briggs*, 475 U.S. 335, 345 (1986) (discussing qualified immunity in the warrant application context). In any event, the Plaintiff does not discuss the contents of the warrant affidavit.

Therefore, the Court considers whether the information available to Detective Sparks was sufficient to establish probable cause to arrest the Plaintiff.

The Plaintiff was arrested for obtaining a prescription by forgery in violation of O.C.G.A. § 16-13-43(a)(3), which states: "It is unlawful for any person … [t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, subterfuge, or theft."  Detective Sparks had the following information: Schweitzer's statement that an individual passed a forged prescription, a copy of the prescription, a copy of Breanna Corbitt's driver's license that was presented with the prescription, Schweitzer's statement that the person who presented the prescription matched the person in the driver's license photo, and both Dr. Harding's and Munoz's confirmations that the prescription was forged.  The Plaintiff contends this does not establish probable cause because if Detective Sparks had investigated further, he could have easily discovered the Plaintiff's wallet was stolen and she was not the individual who presented the forged prescription.  The Plaintiff also points out that Detective Sparks was aware stolen driver's licenses are commonly used to obtain prescription medication.  (Doc. 30 at 14:18-23).  However, Detective Sparks already had reasonably trustworthy information that would cause a prudent person to believe the Plaintiff had committed the crime of obtaining a prescription by forgery.  The pharmacist stated the person who presented the prescription matched Breanna Corbitt's driver's license photo, and Detective Sparks independently confirmed the prescription itself was a forgery by speaking to both Dr. Harding and Munoz.

*City of St. Petersburg v. Austrino*, cited by the Plaintiff, is distinguishable.  898 So. 2d 955 (Fla. Dist. Ct. App. 2005).  In that case, the Second District Court of Appeal

of Florida found that probable cause was lacking to arrest the plaintiff for altering a prescription because the pharmacist reporting the suspected alteration did not actually fill the prescription, the pharmacist had only spoken to a nurse who was not on duty when the prescription was written to confirm her suspicions, and the police officer did not independently investigate whether the prescription was altered.[3]  *Id.* at 960.  In contrast, the reporting pharmacist here actually filled the prescription and identified the Plaintiff as the person presenting the prescription, and the investigating officer contacted the physician assistant who supposedly wrote the prescription to confirm it was fraudulent.

The Court concludes that no reasonable jury could find probable cause was lacking under these facts.  Thus, the City is also entitled to summary judgment on this ground.

### III.   CONCLUSION

For the forgoing reasons, the City's motion for summary judgment (Doc. 21) is **GRANTED**.

**SO ORDERED**, this 27th day of March, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT

---

[3] The pharmacist's suspicions were aroused because the prescription was written by an ER doctor and prescribed a refill, it looked to her as though the number "1" for the refill was written in a different handwriting from the rest of the prescription, and she knew ER doctors did not typically authorize refills. *City of St. Petersburg*, 898 So. 2d at 957.